UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **SKYLAR ADAMS** | **CASE NO. 6:25-CV-00517** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **FRANCISCAN MISSIONARIES OF OUR LADY HEALTH SYSTEM ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6). (Rec. Doc. 7). Plaintiff opposes the Motion (Rec. Doc. 12), and Defendants replied. (Rec. Doc. 13). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is RECOMMENDED that Defendants' Motion to Dismiss be GRANTED in part and DENIED in part.

## Factual Background

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Defendants on January 16, 2025. (Rec. Doc. 8-1). On January 21, 2025, the EEOC, at Plaintiff's request as it was unlikely that the investigation could be completed within 180 days, closed Plaintiff's file and issued a "right to sue"

letter. (Rec. Doc. 1-2). Plaintiff initiated the present action on April 18, 2025, pursuant to Title VII of the Civil Rights Act of 1964 seeking damages and injunctive relief alleging "race-based discrimination, hostile work environment, and retaliation arising from Plaintiff Skylar Adams' employment as a registered nurse, and for damages for deprivation of Constitutional rights pursuant 42 U.S.C. § 1981." (Rec. Doc. 1-1, ¶ 1). On July 7, 2025, Defendants filed the Motion to Dismiss (Rec. Doc. 7) presently before the Court.

According to the Complaint, Plaintiff, an African American female, has been employed by the Franciscan Missionaries of Our Lady Health System, Inc. ("FMOLHS") as a registered nurse since July 10, 2023. (Rec. Doc. 1-1, ¶ 16). Plaintiff alleges that she "formally submitted" multiple oral and written complaints "related to racial discriminatory and prohibited work-place actions (and retaliatory actions taken against her) by her direct Caucasian supervisors and supervisory management." (*Id*. at ¶¶ 18-19). Plaintiff submitted these complaints to "Defendants' management teams, her supervisors, her supervisors' supervisors, [and] multiple members and multiple levels of Defendants' Human Resource (HR) Departments" and alleges that her "complaints were consistently and repeatedly dismissed or ignored." (*Id*. at ¶¶ 18 & 24). Plaintiff states that she reported "multiple instances of: (A) discriminatory enforcement of workplace policies[,] (B) unequal

2

disciplinary actions, (C) retaliatory actions taken against her, and (D) biased treatment in favor of the Plaintiff's Caucasian colleagues." (*Id*. at ¶ 26).

Specifically, Plaintiff asserts that "[o]n at least two occasions (including but not limited to those on February 26, 2024 and July 22, 2024), [] Plaintiff's immediate supervisors (and their supervisor) retaliated against her by 'writing her up' for actions clearly and repeatedly taken by other nursing FMOLHS employees of the Defendants which did not result in adverse employment actions." (*Id*. at ¶ 20). Per Plaintiff, "[n]o adverse employment action was ever taken against Plaintiff's Caucasian co-employees for those similar actions or identical conduct." (*Id*. at ¶ 21).

Plaintiff also maintains that "[h]er immediate supervisor (then Acting Director Emergency Services at Our Lady of Lourdes Women's and Children's Hospital, Inc.) told [] Plaintiff she way being []treated that way because of a 'cultural thing', it was also a 'southern thing' and she should ignore the prohibited conduct and 'grow a thicker skin.'" (Rec. Doc. 1-1, ¶ 25). Plaintiff contends all of these actions, and/or inactions, constitute race-based harassment (Count I), race-based hostile work environment (Count II), retaliation (Count III), and violated her constitutional rights (Count IV).

3

## Applicable Law

I. **Law applicable to Rule 12(b)(6)**

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir. 2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The

4

allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element

5

of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556).  See also *In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir. 2008).

### I.     <u>**Title VII Race Based Discrimination**</u>

While Plaintiff titled her Count I as "Race Based Harassment," when viewing the totality of Plaintiff's Complaint, the Court finds that Plaintiff intended to assert a claim for race discrimination/disparate treatment separate and apart from her hostile work environment claim as race-based harassment fits squarely within a hostile work environment claim.  Pursuant to Title VII, "it shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion ... or national origin." 42 U.S.C. § 2000e-2(a). An employer's action will be found unlawful if the employee can demonstrate that race or religion was a "motivating factor" for an adverse employment action, even if the employer was also motivated by other lawful factors. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citing 42 U.S.C. § 2000e-2(m)).  As this Court summarized,

> The pleading standard for a Title VII claim is governed by *Swierkiewicz v. Sorema N.A.*—not the evidentiary standard set forth in *McDonnell Douglas Corp. v. Green.* Under *Swierkiewicz*, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff because of her protected status." While *McDonnell Douglas*

6

    does not govern a Rule 12(b)(6) analysis of the adequacy of a plaintiff's Title VII allegations, courts have looked to *McDonnell Douglas* in assessing a plaintiff's allegations where, as here, those allegations rely on circumstantial evidence of discrimination. The *McDonnell Douglas* framework requires a plaintiff to first establish a prima facie case of discrimination by showing that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she was discharged or subject to an adverse employment action by her employer; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside of the protected group.

*Newell v. Acadiana Plan. Comm'n Inc.*, 637 F. Supp. 3d 419, 426–27 (W.D. La. 2022)(internal citations omitted).

    Defendants maintain that Plaintiff fails to allege an actionable adverse employment action warranting dismissal of her Title VII discrimination claim[1]. (Rec. Doc. 7-1, p. 10). Plaintiff alleges that she was "written up" on at least two occasions for actions or conduct also taken by Caucasian employees who did not receive similar discipline. (Rec. Doc. 1-1, ¶¶ 20-21). The question for this Court is whether these write ups constitute an adverse employment action.

    The Supreme Court recently broadened the scope of Title VII discrimination claims finding that:

> To make out a Title VII discrimination claim, a [plaintiff] must show some harm respecting an identifiable term or condition of employment.
>
> …

---

[1] It is uncontested that Plaintiff is a member of a protected class.

> What the [plaintiff] does not have to show, according to the relevant text, is that the harm incurred was "significant." Or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar. "Discriminate against" means treat worse, here based on sex. But neither that phrase nor any other says anything about how much worse. There is nothing in the provision to distinguish, as the courts below did, between transfers causing significant disadvantages and transfers causing not-so-significant ones. And there is nothing to otherwise establish an elevated threshold of harm. To demand "significance" is to add words—and significant words, as it were—to the statute Congress enacted.
>
> …
>
> [The plaintiff] need show only some injury respecting her employment terms or conditions. The transfer must have left her worse off, but need not have left her significantly so.

*Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55; 359 (2024).

Here, Plaintiff alleges she received disciplinary write ups for conduct that her Caucasian colleagues also participated in, but who were not similarly disciplined. (Rec. Doc. 1-1, ¶¶ 20-21). Per Plaintiff, these write ups were entered into her FMOLHS personnel file. (*Id.* at ¶ 22). Plaintiff states that she "has suffered and continues to suffer physical and psychological harm as a result of discrimination and harassment…including but not limited to severe and chronic insomnia, difficulties eating, sleeping, and significant anxiety" and also notes that it has caused "damage to her professional career." (*Id.* at ¶¶ 44-45). Considering that the notice pleading rule imposes minimal burdens on a plaintiff at the pleading stage, and the applicable standard requiring the Court to take all facts in the Complaint as true, the Court finds

that Plaintiff has alleged facts showing that she was "treated worse" and suffered "some injury respecting her employment terms or conditions." *See* Fed. R. Civ. P. 8; *see also Muldrow*, 601 U.S. at 354-55; 359. Accordingly, the Court recommends that Defendants' Motion to Dismiss Plaintiff's Title VII race-based discrimination claim be denied.

## II. Title VII Race Based Hostile Work Environment

"To establish a prima facie case of hostile work environment, a plaintiff must show: (1) that [s]he belongs to a protected group; (2) [s]he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known of the harassment, yet failed to take prompt remedial action." *Watkins v. Texas Dept. of Criminal Justice,* 269 Fed. App'x. 457, 463 (5th Cir. 2008). If the harassment is allegedly committed by a supervisor with immediate or successive authority over the victim, the plaintiff need only satisfy the first four elements. *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 353 (5th Cir. 2001) (citing *Faragher*, 524 U.S. at 807).

Not all "harassment" is actionable; "it must be sufficiently severe or pervasive to alter conditions of [the victim's] employment and create an abusive working environment." *Harvill v. Westward Commc'ns, LLC,* 433 F.3d 428, 434 (5th Cir. 2005). "To be actionable, the challenged conduct must be both objectively offensive,

meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Id.* In determining whether a workplace constitutes a hostile work environment, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Harris*, 510 U.S. at 23. "Isolated incidents do not support a hostile work environment claim unless the complained-of incident is 'extremely serious' in nature." *Higgins v. Lufkin Indus., Inc.*, 633 F.App'x 229, 235 (5th Cir. 2015). To have been pervasive in the workplace, there must have been a "steady barrage" of such comments. *Torrez v. Milk Prods.*, L.P., 402 F.Supp.2d 773, 779 (W.D. Tex. 2005).

Defendants assert that "Plaintiff's allegations fall far short of the standard necessary to properly allege a hostile work environment" and that Plaintiff "fails to identify any specific instances of racial harassment and relies solely on broad, unsupported assertions." (Rec. Doc. 7-1, p. 15). This Court agrees. Plaintiff's Complaint is devoid of specific allegations regarding the "racial discriminatory and prohibited work-place actions" reported. (Rec. Doc. 1-1, ¶ 19). As such, the Court is unable to determine whether the alleged harassment is "sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

While not attached to her Complaint, Plaintiff does reference her EEOC Charge of Discrimination, and it was attached to Defendants' Motion to Dismiss. (Rec. Doc. 1-1, ¶ 5 & Rec. Doc. 8-1). Generally, in ruling on a motion pursuant to F.R.C.P. Rule 12(b)(6), the court is limited to the contents of the pleadings and the documents attached thereto; however, the court may refer to documents attached to a motion to dismiss if they are referenced in the complaint and central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). In so attaching such documents, the defendant has "merely assist[ed] the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id*. Because the Court finds that the EEOC Charge of Discrimination attached to Defendants' Motion is referenced in the Complaint and is central to Plaintiff's claims, the Court will consider it in addition to Plaintiff's Complaint.

In her Charge of Discrimination, in relevant part, Plaintiff alleges she has "been discriminated against because of [her] Race-Black/African American in that [she] was constantly harassed by Charge Nurse…(White) in that she would repeatedly harass [her] by requesting [her] to remove [her] sweater/jacket upon walking into work while others were not, and accusing [her] of poor job performance." (*Id*. at p. 1). No other specifics allegations were made regarding Plaintiff's race discrimination claims(s). Rule 8 does not require "detailed factual

11

allegations," but "it demands more than labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. at 678. The Court finds that Plaintiff's vague allegations do not show conduct that is sufficiently severe to support a hostile workplace claim. Accordingly, the Court recommends that Plaintiff's Title VII hostile work environment claim be dismissed.

### III. Retaliation

#### a. Did Plaintiff Exhaust her Administrative Remedies?

Defendants first maintain that Plaintiff's retaliation claim should be dismissed for failing to exhaust her administrative remedies. Namely, Defendants contend that Plaintiff failed to specifically raise retaliation in her Charge of Discrimination and should thus be prohibited from raising it now. (Rec. Doc. 7-1).

> Before bringing a claim under Title VII, a plaintiff must first file a charge with the EEOC. If that charge is denied by the EEOC, the EEOC issues a right-to-sue letter, after which plaintiff has 90 days—or 300 days in a deferral state—to file a Title VII action. A plaintiff must exhaust the administrative process and receive her statutory notice of right-to-sue before filing a civil action in federal court. Failure to file a charge with the EEOC and exhaust administrative remedies before filing a Title VII action will result in dismissal.

*Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013)(internal citations omitted).

In her Charge, Plaintiff alleged discrimination based on disability, pregnancy, race, and sex. (Rec. Doc. 8-1). As noted above, Plaintiff alleged that her Caucasian Charge Nurse discriminated against her because of her race by "repeatedly

12

harassing" her, requesting her to remove her sweater/jacket while not requesting the same of others, and by accusing her of poor job performance. (*Id*. at. p. 1). Per the Fifth Circuit:

> In this circuit, a claimant is not required to assert all legal claims in the EEOC charge; rather, it is sufficient if in the EEOC charge the claimant asserts the facts that are the basis for the legal claims. *See Sanchez v. Standard Brands,* 431 F.2d 455, 462 (5th Cir.1970) ("In the context of a statute like Title VII it is inconceivable that a charging party's rights should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations. Surely the only procedural requirement which should confront a Title VII complainant is the requirement that he state, within the ninety-day period, facts sufficient to trigger a Commission investigation.").

*Harris v. Parker Coll. of Chiropractic*, 286 F.3d 790, 795 (5th Cir. 2002).

While Plaintiff did not use the term "retaliation" in her EEOC charge, she did allege that her supervisor harassed her and accused her of poor job performance. (Rec. Doc. 8-1). The Court finds that Plaintiff's retaliation claim emanates from the same factual allegations raised in the EEOC charge so as "to notify [Defendants] of the nature of a pending charge." *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 879 (5th Cir. 2003).

### b. Did Plaintiff Plead an Actionable Retaliation Claim?

Defendants also maintain that Plaintiff's retaliation claim fails because she failed to allege that she suffered an adverse employment action and/or a causal connection between alleged protected activity and the alleged adverse action. (Rec. Doc. 7-1, pp. 14-15). Title VII forbids an employer from retaliating against an

13

employee who files a charge of discrimination or participates in an investigation of discrimination. *See Burlington N. & Santa Fe Rv. Co. v. White*, 548 U.S. 53, 59, (2006). Title VII retaliation requires a plaintiff to establish that (1) [s]he participated in protected activity under Title VII; (2) [her] employer took an adverse action; and (3) a causal connection exists between the protected activity and adverse employment action. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). "The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred 'but for' her protected conduct." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005). "Close timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). "However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *Id*.

Plaintiff alleges she reported "multiple specific instances" of "discriminatory enforcement of workplace polices," "unequal disciplinary actions," "retaliatory actions taken against her," and "biased treatment in favor of…Caucasian colleagues." (Rec. Doc. 1-1, ¶ 26). Plaintiff alleges these reports were made on or

about February 2, 2024, February 18, 2024, April 9, 2024, and July 22, 2024. (*Id.* at ¶¶ 25-26). Per Plaintiff, her immediate supervisors and their supervisors "retaliated against her" for making these reports "by 'writing her up'" on February 26, 2024, and July 22, 2024, despite not taking the same action against other employees for the same conduct alleged in the write ups. (*Id.* at ¶ 20). The question for this Court again is whether Plaintiff's write ups constitute an adverse employment action.

The *Muldrow* Court distinguished the adverse action required in retaliation cases from what is required in general discrimination cases noting that more is required for retaliation causes of action. The Supreme Court noted that under Title VII's anti-retaliation provision, "an employer may not take action against an employee for bringing or aiding a Title VII charge" and noted "that the provision applies only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm." *Muldrow*, 601 U.S. at 357. The *Muldrow* Court reasoned that they

> [A]dopted the standard for reasons peculiar to the retaliation context. The test was meant to capture those (and only those) employer actions serious enough to 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.' If an action causes less serious harm…it will not deter Title VII enforcement; and if it will not deter Title VII enforcement, it falls outside the purposes of the ban on retaliation.

*Id.* (internal citations omitted).

Here, Plaintiff's only alleged adverse employment action is receiving at least two disciplinary write ups. The Court agrees with Defendants that this falls below the "materially adverse" and "significant harm" standard articulated by the Supreme Court. It is unlikely that a disciplinary write up, with nothing more, would deter a reasonable worker from making or supporting a charge of discrimination. Accordingly, the Court recommends that Plaintiff's Title VII retaliation claim be dismissed.

## IV.    Constitutional Claims

At Count IV, Plaintiff alleges that she "enjoys and is accorded certain Constitutional rights pursuant to the United State Constitution, the provisions of 42 U.S.C.1981, and the Louisiana Constitution of 1974 which include but are not limited to the right to employment free from unreasonable employment restrictions based upon her race as an African-American and her citizenship of the United States and the State of Louisiana pursuant to the Louisiana Constitution of 1974" and alleges that Defendants' conduct violated and continues to violate those rights. (Rec. Doc. 1-1, ¶¶ 38-42)

Employment discrimination claims brought under § 1981 are analyzed under the evidentiary framework applicable to claims arising under Title VII. *Lawrence v. Univ. of Tex. Med. Branch at Galveston,* 163 F.3d 309, 311 (5th Cir.1999). Accordingly, because the Court finds that Plaintiff has sufficiently pleaded Title VII

race-based discrimination, the Court recommends that Defendants' Motion to Dismiss Plaintiff's constitutional claims be denied at this time.

## V. Plaintiff's Request for Leave to Amend

In response to Defendants' Motion, Plaintiff requested an opportunity to amend her Complaint. (Rec. Doc. 12, p. 17). Under Fed. R. Civ. P. 15, a court should freely give leave to amend a complaint when justice so requires. Therefore, a court "[g]enerally. . . should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving plaintiff 'at least one chance to amend.'" *Hernandez v. Ikon Office Solutions, Inc.*, 306 F. App'x 180, 182 (5th Cir. 2009); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). See also *Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir. 1986) (noting that "[a] complaint sought to be dismissed under Rule 12(b)(6) may generally be amended to cure its deficiencies."). Indeed, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner which will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991).

The Court finds that it would be inequitable to dismiss Plaintiff's claims without allowing her an opportunity to remedy the sparseness of the factual allegations set forth in the Complaint as noted above.

## Conclusion

For the reasons discussed herein, while it is recommended that Defendants' Motion to Dismiss (Rec. Doc. 7) be GRANTED in part and DENIED in part whereby Plaintiff's hostile work environment and retaliation claims are dismissed, the Court recommends that the motion should be **DENIED WITHOUT PREJUDICE** at this time to allow Plaintiff, within **fourteen (14) days** of the entry of the Court's ruling on this report and recommendation, the opportunity to amend her Complaint to cure the deficiencies as provided in the foregoing analysis and thereafter to the rights of Defendants to reurge their motion to dismiss.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

18

fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 18th day of September, 2025.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE